# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

MASSACHUSETTS BAY INSURANCE
COMPANY, a New Hampshire Company,

        Plaintiff,

v.

ECL GROUP, LLC,

        Defendant.

Case No.:

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Massachusetts Bay Insurance Company ("MBIC"), by and though its counsel of record, and for its Complaint against Defendant ECL Group, LLC ("ECL"), states as follows:

## INTRODUCTION

1.     This is an insurance coverage dispute between MBIC, on the one hand, and ECL, on the other hand. MBIC seeks a declaration that it has no duty to defend or indemnify ECL for six underlying putative class actions arising out of several alleged data breaches.

## PARTIES, JURISDICTION AND VENUE

2.     Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1).

3.     Plaintiff, MBIC, is a corporation organized under the laws of the State of New Hampshire, with its principal place of business in Worcester, Massachusetts.

4.     Defendant, ECL, is a limited liability company organized under the laws of the State of North Carolina, with its principal place of business in Durham, North Carolina.

5.     Upon information and belief, the sole member of ECL is Greg E. Lindberg, who is a citizen of the State of North Carolina. Thus, ECL is a citizen of North Carolina.

1

6.     The six underlying lawsuits for which ECL seeks a defense and indemnity are putative class actions. The Business Liability Coverage Part of the MBIC Policy has a $1 million Personal and Advertising Injury Limit and $2 million General Aggregate Limit. The Umbrella Liability Coverage Part of the Policy has a $5 million Each Claim Limit and $5 million Aggregate Limit.

7.     Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff and Defendant, and (b) the amount in controversy, including the potential costs of both defending and indemnifying ECL, substantially exceeds $75,000.

8.     Venue is appropriate under 28 U.S.C. § 1391 because the making of the insurance contracts at issue, which forms the basis of this action occurred in the Middle District of North Carolina.

## FACTUAL BACKGROUND

**A.     The Policy**

9.     MBIC issued Business Owners Policy No. OD6-A892313-05 to ECL Group, LLC, effective 2/5/2021 to 2/5/2022 (the "Policy").   A true and correct copy of the Policy is attached hereto as **Exhibit A.**

**B.  The Alliance Lawsuit**

10.     On April 15, 2022, Alliance Ophthalmology, PLLC, Dallas Retina Center, PLLC, and Texas Eye and Cataract, PLLC, individually and on behalf a class of those similarly situated, filed a putative class action against ECL in the United States District Court for the Middle District of North Carolina, bearing Case No. 22-cv-296 (the Alliance Lawsuit"). A true and correct copy of the Alliance Complaint is attached hereto as **Exhibit B.**

2

11.    The Complaint alleges the plaintiffs are medical providers engaged in the practice of ophthalmology in Texas, who entered into contracts with ECL under which ECL agreed to provide two services: (1) revenue cycle management, and (2) maintenance of electronic medical records ("EMR"). Plaintiffs allegedly entered into substantially similar contracts with ECL under which they purchased licenses to use ECL's EMR software.

12.    According to the Complaint, in or about March 2021, ECL experienced a ransomware attack that impacted iMedicWare. iMedicWare was allegedly inaccessible to licensees for between four (4) and seven (7) days. This outage purportedly caused severe disruption to licensees' practices because they could not access patient data during this period. The Complaint alleges that rather than be transparent about experiencing a ransomware attack, ECL initially tried to hide what happened from its clients in order to keep them from exercising their remedies under the EMR contracts and to avoid having to make the fee concessions required under those contracts, and ECL continued to falsely claim via mass emails to licensees the outage was a "technical issue," when in reality ECL knew it was the result of a ransomware attack. On March 26, 2021, nearly a week after the ransomware attack, ECL allegedly finally informed its licensees via mass email that iMedicWare had suffered a ransomware attack and admitted that some of its databases were corrupted or encrypted by the ransomware. The Complaint alleges that even after the initial outages, it took more than 30 days for ECL to restore some of the functionality and services of iMedicWare that ECL agreed to provide under the contracts.

13.    According to the Complaint, on April 8, 2021, ECL allegedly experienced another ransomware attack that impacted iMedicWare, and there were subsequent outages on April 13, 16, 20, 26, and 27. Each outage allegedly impacted licensees' practices. The Complaint alleges that a few months later, on June 7, 2021, iMedicWare suffered another significant outage for three

3

days. The Complaint further alleges that ECL never recovered patient data from March 15, 2021 to March 19, 2021, which prevented licensees from billing for services they provided that week. ECL's iMedicWare alleged failures breached its obligations under the contracts related to security of information, software availability, software functionality, and defect resolution periods.

14.     The Complaint further alleges that on August 17, 2021, ECL experienced an attack that impacted myCare Integrity. From August 20, 2021 to August 27, 2021, ECL allegedly sent numerous mass emails to licensees about the issues myCare Integrity was experiencing, which falsely characterized the issue as a "performance" or "system" issue when ECL knew it was actually caused by a ransomware attack. Finally, on August 28, 2021, ECL allegedly informed licensees via a mass email that ECL had experienced an attack, but continued to misrepresent the extent of the attack and how long it could take to restore access to and the functionality of myCare Integrity, noting only via mass email that it was "diligently working to resolve the issue." The Complaint alleges that for months on end, licensees' practices were crippled due to ECL's failures to maintain security of its patient information and access and functionality of myCare Integrity. This allegedly breached ECL's obligations under the EMR contracts, under which ECL agreed to provide an export of patient data at no expense.

15.     Additionally, the Complaint alleges ECL outsources its revenue cycle services to a third-party vendor, Alta Medical Management ("Alta"), and that in February 2020, long before the ransomware attack, Alta admitted to TEC that it had been sending bills under the wrong clinic's name. In the fall of 2020, Alta allegedly again admitted that it had issued erroneous bills with the wrong provider, facility, and tax ID. In May 2021, Alta purportedly admitted more failures and that it sent incorrect statements without first obtaining TEC's authorization to release the statements, even though some of the patients at issue were on a specific list of patients for

which statements were not to be sent without prior approval by TEC. In addition to these specific failures, Alta allegedly simply failed to properly perform revenue cycle services and billing practices for the duration of the TEC contract. Ultimately, due to Alta's repeated failures, TEC was forced to engage a new revenue cycle services vendor that has uncovered at least $65,000 in unbilled or lost charges that Alta should have billed.

16.     The first cause of action is breach of contract and alleges by failing to maintain the security of the plaintiffs' data and access and functionality of the EMR software, as outlined by failing to provide competent revenue cycle services, as outlined herein, ECL breached the TEC contract and the DRC contract. The third cause of action is breach of contract and alleges ECL breached the BAAs by failing to report promptly the security incidents and attacks that ECL experienced. The fourth cause of action is breach of contract for ECL's alleged failure to provide patient data after plaintiffs terminated their contracts. The fifth cause of action alleges fraud and that despite knowing it had experienced attacks causing the issues with the EMR software, ECL informed the plaintiffs that it was experiencing mere "technical," "performance," and "system" issues. The sixth cause of action alleges ECL engaged in fraudulent, deceptive, and other unfair acts to hide its failures and prevent, delay, or hinder plaintiffs from switching EMR vendors.

**C. The Sandvig Lawsuit**

17.     On June 10, 2022, Kimberly Sandvig, individually and on behalf of all others similarly situated, filed a putative class action against ECL in the United States District Court for the Eastern District of North Carolina, bearing Case No. 22-cv-00234 (the "Sandvig Lawsuit"). A true and correct copy of the Sandvig Complaint is attached hereto as **Exhibit C**.

18.     The Complaint alleges ECL provides ophthalmology practice management software and electronic health records systems for 40 percent of the eye care market, and that

5

Summit Eye contracted with ECL for their myCare Integrity Solution software. According to the Complaint, Summit sent Notice Letters to plaintiff and class members, stating that on March 1, 2022, ECL "identified unauthorized access to [its] myCare Integrity data" on or about December 4, 2021. The Complaint further alleges that by March 28, 2022 Defendant Eye Care Leaders knew cyberthieves had unauthorized access to and "deleted databases and system configuration files" containing patient information from the myCare Integrity network.

19. On March 28, 2022, ECL allegedly informed Summit Eye that unauthorized access to patient information may have "included your name, date of birth, medical record number, health insurance information, Social Security number, and information regarding care received at Summit Eye." The Complaint also alleges that ECL's investigation determined that the files impacted included plaintiff and class members' full name and "one or more of the following: "date of birth, medical record number, health insurance information, Social Security number, and information regarding care received at Summit Eye. Plaintiffs allege the Notice Letters that Summit Eyes sent to its patients, informing them of Eye Care Leaders Data Breach, including the plaintiff and class members, are dated April 27, 2022, nearly 5 months after the Eye Care Leaders knew of the Data Breach.

20. According to the Complaint, ECL's failure to employ reasonable and appropriate measures to protect against unauthorized access to patient PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. The Complaint further alleges that ECL breached various provisions of HIPAA. Plaintiffs allege that where the most private information belonging to plaintiff and class members was accessed and removed from ECL's network, there is a strong probability that entire batches of stolen information have been dumped

on the black market and are yet to be dumped on the black market, meaning plaintiff and class members are at an increased risk of fraud and identity theft for many years into the future.

21.     Count one of the Complaint alleges negligence; count two alleges invasion of privacy and that by intentionally failing to keep plaintiff's and class members' Private Information safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, ECL intentionally invaded Plaintiff's and class members' privacy by intrusion; count three alleges breach of fiduciary duty.

**D.  The Farley Lawsuit**

22.     On June 21, 2022, Kimberly Farley, on behalf of herself and all others similarly situated, filed a putative class action in the United States District Court for the Middle District of North Carolina against ECL, bearing Case No. 22-cv-00468 (the "Farley Lawsuit"). A true and correct copy of the Farley Complaint is attached hereto as **Exhibit D**.

23.     Plaintiff alleges she is a former patient of Summit Eye Associates, which contracted with ECL to provide practice management and record-keeping service. The Complaint alleges that on March 2021, ECL experienced its first ransomware attack that affected its iMedicWare software service, interrupting ECL's services to customers. On discovering the attack, ECL allegedly knew it was a "ransomware" breach but did not disclose the breach to its customers or patients and first referred to it as a "technical issue." After restoring its systems to some functionality, ECL allegedly experienced another hack on April 8, 2021, with hackers once again breaching the iMedicWare software service, which also exposed patient PII and PHI to cybercriminals. Even so, ECL allegedly did not disclose the breach to patients, instead choosing to conceal it from them and obfuscate the nature of the breach to its customers.

7

24.     The Complaint further alleges that only four months after the April 2021 hack, in July 2021, ECL experienced yet another data breach, this time targeting ECL's myCare Integrity systems. Despite having experienced at least three breaches in 2021, ECL allegedly experienced at least one more breach in December 2021. Thus, ECL allegedly experienced at least four data breaches in 2021, but disclosed none of them to the patients they affected, and instead, ECL left that to its customers, who only just began notifying patients about the breach this year. The Complaint alleges Defendant disclosed the PII and PHI of plaintiff and members of the proposed class for criminals to use in the conduct of criminal activity.

25.     Count one alleges negligence; count two alleges negligence *per se* and that ECL violated its duties under the FTC Act; count two alleges invasion of privacy and that the Data Breach constitutes an intentional interference with plaintiff's and the class's interest in solitude or seclusion and Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate; count three alleges unjust enrichment and that Defendant should be compelled to disgorge into a common fund for the benefit of plaintiff and members of the class all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged

**E. The Forrester Lawsuit**

26.     On July 1, 2022, Chad Forrester, on behalf of himself and all others similarly situated, filed a putative class action against ECL in the United States District Court for the Middle District of North Carolina, bearing Case No. 22-cv-00503 (the "Forrester Lawsuit"). A true and correct copy of the Forrester Complaint is attached hereto as **Exhibit E**.

27.     The Complaint alleges Plaintiff is a patient of Precision Eye Care Ltd. and ECL provides record-keeping services for Precision. According to the Complaint, on or around

8

December 4, 2021, an unauthorized third-party was able to gain access to ECL's network (the "Data Breach"), and the unauthorized third-party was able to access ECL's data and deleted databases and system configuration files, including databases and system configuration files that contained plaintiff's Private Information. The Complaint further results that ECL has negligently disclosed millions of plaintiff's and class members' Private Information. Plaintiff alleges that ECL has never notified the breach victims of the data breach. The Complaint also alleges that the unencrypted PII and PHI of plaintiff and class members will likely end up for sale on the dark web as that is the modus operandi of hackers.

28.     Count one alleges negligence and that ECL breached its duties under the FTC Act and HIPPA; count two alleges negligence *per se* and that ECL violated Section 5 of the FTC Act; count three alleges invasion of privacy and that ECL's reckless and negligent failure to protect plaintiff's and class members' Private Information constitutes an intentional interference with plaintiff's and the class members' interest in solitude or seclusion, and that ECL acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate; count four alleges unjust enrichment and that ECL enriched itself by saving the costs they reasonably should have expended on data security measures to secure plaintiff' and class members' Private Information.

**F.  The Solomon Lawsuit**

29.     On July 8, 2022, Detrina Solomon, on her own behalf and on behalf of all others similarly situated, filed a putative class action against ECL in the United States District Court for the Middle District of North Carolina, bearing Case No. 22-cv-00526 (the "Solomon Lawsuit"). A true and correct copy of the Solomon Complaint is attached hereto as **Exhibit F**.

9

30.     The Complaint alleges Plaintiff is a patient of an eyecare clinic in Texas that uses ECL as a vendor. According to the Complaint, on or around December 4, 2021, a malicious actor gained unauthorized access to ECL's myCare Identity solution, which included ECL's databases, system configuration files, and data. By doing so, the actor allegedly gained access to the sensitive personal, medical, financial, and insurance information of ECL's clients' current and former patients.

31.     The Complaint further alleges that this is not ECL's first improper disclosure of patients' Sensitive Information, and that in March 2021, ECL suffered a ransomware attack that impacted its iMedicWare platform. On August 17, 2021, ECL purportedly suffered another attack related to its myCare Integrity platform. Plaintiff alleges Stolen Sensitive Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines and is frequented by criminals, fraudsters, and other wrongdoers. The Complaint further alleges that ECL's conduct violated HIPAA.

32.     Count one alleges negligence; count two alleged negligence *per se* and that ECL violated Section 5 of the FTC Act, HIPPA and North Carolina statutory notice requirements; count three alleges violation of North Carolina Unfair and Deceptive Trade Practices Act; and count four seeks a declaratory judgment regarding ECL's statutory obligations to Plaintiffs.

**G.  The Byers Lawsuit**

33.     On August 2, 2022, Jeanne Byers, on behalf of herself and all others similarly situated, filed a putative class action in the United States District Court for the Middle District of North Carolina against ECL, bearing Case No. 22-cv-00607 (the "Byers Lawsuit"). A true and correct copy of the Byers Complaint is attached hereto as **Exhibit G**.

34.     The Complaint alleges Jeanne Byers is a patient of an eyecare clinic in Missouri that uses ECL as a vendor. The Byers Lawsuit contains the same allegations and counts as the Solomon Lawsuit, and seeks the same relief.

35.     ECL has requested coverage from MBIC for these lawsuits. MBIC contends that it has no obligation to defend or indemnify ECL in connection with these suits. Accordingly, an actual controversy exists between MBIC on the one hand, and ECL on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## COUNT I – DECLARATORY JUDGMENT
### (Business Liability – Insuring Agreement)

36.     Plaintiff adopts and repeats the allegations of Paragraph 1 through 35 as and for Paragraph 36, as though the same were fully set forth herein.

37.     The Business Liability Coverage Part of the Policy provides coverage for damages because of "personal and advertising injury" caused by an offense committed during the policy period.

38.     "Personal and advertising injury" is defined, in relevant part, as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:***e. Oral or written publication, in any manner, of material that violates a person's right of privacy".

39.     The Alliance Complaint does not allege ECL published material violating a person's right of privacy, seek damages for any such alleged publication, or otherwise allege or involve any offense contained in the "personal and advertising injury" definition.

40.     The Alliance Lawsuit consequently does not fall within the scope of coverage provided by the Insuring Agreement in the Policy.

11

41.     The Sandvig, Farley, Forrester, Solomon, and Byers Lawsuits allege that a third party bad actor gained unauthorized access to ECL's system and obtained the plaintiffs' and class members' information. Those suits do not allege that ECL published any material that violates a person's right of privacy.

42.     Accordingly, the Sandvig, Farley, Forrester, Solomon, and Byers Lawsuits, do not allege or involve any offense contained in the "personal and advertising injury" definition.

43.     As a result, the Business Liability Coverage Part in the Policy does not actually or potentially provide coverage for the Alliance, Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit.

44.     MBIC, therefore, has no duty to defend or indemnify ECL against the Alliance, Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit under the Business Liability Coverage Part of the Policy.

WHEREFORE, MBIC respectfully request that this Honorable Court declare that it has no duty to defend or indemnify ECL in connection with the Alliance, Sandvig, Farley, Forrester, Solomon, and/or Byers Lawsuits, and grant any other relief that it deems just and equitable under the circumstances, including the award of costs.

## COUNT II – DECLARATORY JUDGMENT
### (Business Liability – Access to Personal Information Exclusion)

45.     Plaintiffs adopt and repeat the allegations of Paragraph 1 through 35 as and for Paragraph 45, as though the same were fully set forth herein.

46.     The Business Liability Coverage Part of the Policy contains the following exclusion:

This insurance does not apply to:

**r. Access Or Disclosure Of Confidential**

12

**Or Personal Information And Data-related Liability**
Damages arising out of:
**(1)** Any access to or disclosure of any
person's or organization's
confidential or personal
information, including patents,
trade secrets, processing
methods, customer lists, financial
information, credit card
information, health information or
any other type of nonpublic
information; or

**(2)** The loss of, loss of use of, damage
to, corruption of, inability to
access, or inability to manipulate
electronic data.

This exclusion applies even if
damages are claimed for notification
costs, credit monitoring expenses,
forensic expenses, public relations
expenses or any other loss, cost or
expense incurred by you or others
arising out of that which is described
in paragraphs **(1)** or **(2)** above.
However, unless paragraph **(1)** above
applies, this exclusion does not apply
to damages because of "bodily injury".

47.     The Alliance Lawsuit seeks to recover for the loss of or loss of use of, or inability
to access its electronic patient data.

48.     Therefore, even assuming the Alliance Lawsuit alleged "personal and advertising
injury", the Access Or Disclosure Of Confidential Or Personal Information Exclusion precludes
coverage under the Business Liability Coverage Part of the Policy for the Alliance Lawsuit.

49.     The Sandvig, Farley, Forrester, Solomon, and Byers Lawsuits allege hackers
accessed patient financial information and health information. Thus, those Complaints seek

13

damages arising out of any access or disclosure to a person's confidential or personal information, including financial information and health information.

50.     Thus, even assuming the Sandvig, Farley, Forrester, Solomon, and/or Byers Lawsuits alleged "personal and advertising injury", the Access Or Disclosure Of Confidential Or Personal Information Exclusion precludes coverage under the Business Liability Coverage Part of the Policy for those suits.

51.     The Business Liability Coverage Part in the Policy consequently does not actually or potentially provide coverage for the Alliance, Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit.

52.     Accordingly, MBIC has no duty to defend or indemnify ECL against the Alliance, Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit under the Business Liability Coverage Part of the Policy.

WHEREFORE, MBIC respectfully request that this Honorable Court declare that it has no duty to defend or indemnify ECL in connection with the Alliance, Sandvig, Farley, Forrester, Solomon, and/or Byers Lawsuits, and grant any other relief that it deems just and equitable under the circumstances, including the award of costs.

### COUNT III – DECLARATORY JUDGMENT
**(Business Liability – Distribution of Material In Violation of Statutes Exclusion)**

53.     Plaintiffs adopt and repeat the allegations of Paragraph 1 through 35 as and for Paragraph 53, as though the same were fully set forth herein.

54.     The Business Liability Coverage Part of the Policy contains the following exclusion:

This insurance does not apply to:

**Distribution of Material in Violation of Statutes**

14

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any other laws, statutes, ordinances or regulations, that address, prohibit, or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

55.     The Alliance Complaint alleges that ECL violated HIPPA regulations in breaching its contracts. The Sandvig Complaint, Farley Complaint, and Forrester Complaint allege that ECL's conduct violated the FTC and HIPPA. The Solomon and Byers Complaint allege that ECL's conduct violated the FTC, HIPAA, and North Carolina's consumer protection statute.

56.     All of these statutes are "any other laws, statutes, ordinances, or regulations, that address, prohibit, or limit the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information".

57.     Thus, even assuming these Complaints allege "personal and advertising injury", such injury arises directly or indirectly out of any action or omission that violates or is alleged to violate any other laws, statutes, ordinances or regulations, that address, prohibit, or limit the

15

printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

58.     The Distribution Of Material In Violation Of Statutes Exclusion, therefore, precludes coverage for the Alliance, Sandvig, Farley, Forrester, Solomon, and Byers Lawsuits.

59.     The Business Liability Coverage Part in the Policy consequently does not actually or potentially provide coverage for the Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit.

60.     Accordingly, MBIC has no duty to defend or indemnify ECL against the Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit under the Business Liability Coverage Part of the Policy.

WHEREFORE, MBIC respectfully request that this Honorable Court declare that it has no duty to defend or indemnify ECL in connection with the Alliance, Sandvig, Farley, Forrester, Solomon, and/or Byers Lawsuits, and grant any other relief that it deems just and equitable under the circumstances, including the award of costs.

**COUNT IV – DECLARATORY JUDGMENT**
**(Business Liability – Breach of Contract Exclusion)**

61.     Plaintiffs adopt and repeat the allegations of Paragraph 1 through 35 as and for Paragraph 61, as though the same were fully set forth herein.

62.     The Business Liability Coverage Part of the Policy contains the following exclusion:

This insurance does not apply to:

**f. Breach of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

16

63.     The first four counts of the Alliance Complaint allege breach of contract. The fraud counts in the Alliance Complaint also allege and are based on the same conduct that is alleged to have breached the contracts.

64.     Therefore, even assuming the Alliance Lawsuit alleges "personal and advertising injury", such injury arises out of a breach of contract and the Breach of Contract Exclusion precludes coverage for the Alliance Lawsuit.

65.     The Business Liability Coverage Part in the Policy consequently does not actually or potentially provide coverage for the Alliance Lawsuit.

66.     Accordingly, MBIC has no duty to defend or indemnify ECL against the Alliance Lawsuit under the Business Liability Coverage Part of the Policy.

WHEREFORE, MBIC respectfully request that this Honorable Court declare that it has no duty to defend or indemnify ECL in connection with the Alliance, Sandvig, Farley, Forrester, Solomon, and/or Byers Lawsuits, and grant any other relief that it deems just and equitable under the circumstances, including the award of costs.

## COUNT V – DECLARATORY JUDGMENT
### (Umbrella Liability – Insuring Agreement)

67.     Plaintiffs adopt and repeat the allegations of Paragraph 1 through 35 as and for Paragraph 67, as though the same were fully set forth herein.

68.     The Umbrella Liability Coverage Part of the Policy contains the following Insuring Agreement:

**COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**
**1. Insuring Agreement**
**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising in- jury" to which this insurance applies. We will have the

17

right and duty to defend the insured
against any "suit" seeking damages
for such "personal and advertising
injury" when the "underlying
insurance" does not provide coverage
or the limits of "underlying insurance"
have been exhausted.

*** 

69.    The "retained limit" is defined as the available limits of "underlying insurance"

scheduled in the Declarations or the "self-insured retention", whichever applies. The primary

Business Liability Coverage Part of the Policy is listed in the scheduled "underlying insurance".

70.    Thus, the Umbrella Coverage Part potentially applies where the Business Liability

Coverage Part does not provide coverage or its limits have been exhausted.

71.    As a result, if the Court determines that MBIC has a duty to defend for any of these

suits under the Business Liability Coverage Part, then the respective suit(s) do not fall within the

Umbrella Insuring Agreement and the Umbrella Liability Coverage Part does not provide coverage

for the respective suit(s).

72.    Additionally, the Umbrella Liability Coverage Part of Policy provides coverage for

"ultimate net loss" because of "personal and advertising injury" caused by an offense committed

during the policy period.

73.    "Personal and advertising injury" is defined, in relevant part, as "injury, including

consequential 'bodily injury', arising out of one or more of the following offenses:***e. Oral or

written publication, in any manner, of material that violates a person's right of privacy".

74.    The Alliance Complaint does not allege ECL published material violating a

person's right of privacy, seek damages for any such alleged publication, or otherwise allege or

involve any offense contained in the "personal and advertising injury" definition.

18

75.    The Alliance Lawsuit consequently does not fall within the scope of coverage provided by the Umbrella Liability Insuring Agreement in the Policy.

76.    The Sandvig, Farley, Forrester, Solomon, and Byers Lawsuits allege that a third party bad actor gained unauthorized access to ECL's system and obtained the plaintiffs' and class members' information. Those suits do not allege that ECL published any material that violates a person's right of privacy.

77.    Accordingly, the Sandvig, Farley, Forrester, Solomon, and Byers Lawsuits, do not allege or involve any offense contained in the "personal and advertising injury" definition.

78.    As a result, the Umbrella Liability Coverage Part in the Policy does not actually or potentially provide coverage for the Alliance, Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit.

79.    MBIC, therefore, has no duty to defend or indemnify ECL against the Alliance, Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit under the Umbrella Liability Coverage Part of the Policy.

WHEREFORE, MBIC respectfully request that this Honorable Court declare that it has no duty to defend or indemnify ECL in connection with the Alliance, Sandvig, Farley, Forrester, Solomon, and/or Byers Lawsuits, and grant any other relief that it deems just and equitable under the circumstances, including the award of costs.

## COUNT VI – DECLARATORY JUDGMENT
### (Umbrella Liability – Access to Personal Information Exclusion)

80.    Plaintiffs adopt and repeat the allegations of Paragraph 1 through 35 as and for Paragraph 80, as though the same were fully set forth herein.

81.    The Umbrella Liability Coverage Part of the Policy contains the following Access or Disclosure of Confidential or Personal Information Exclusion:

19

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost

or expense incurred by you or others aris-ing out of any access to or disclosure of any person's or organization's confidential or personal information.

82.     The Alliance Lawsuit seeks to recover for alleged losses incurred in connection with the data breaches that involved patient financial and health information.

83.     Therefore, even assuming the Alliance Lawsuit alleged "personal and advertising injury", such injury arises out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

84.      The Access Or Disclosure Of Confidential Or Personal Information Exclusion, therefore, precludes coverage under the Umbrella Liability Coverage Part of the Policy for the Alliance Lawsuit.

85.     The Sandvig, Farley, Forrester, Solomon, and Byers Lawsuits allege hackers accessed patients' financial information and health information.

86.     Thus, even assuming those suits alleged "personal and advertising injury", such injury arises out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists,

20

financial information, credit card information, health information or any other type of nonpublic information.

87.     The Access Or Disclosure Of Confidential Or Personal Information Exclusion, therefore, precludes coverage under the Umbrella Liability Coverage Part of the Policy for the Sandvig, Farley, Forrester, Solomon, and Byers Lawsuits.

88.     The Umbrella Liability Coverage Part in the Policy consequently does not actually or potentially provide coverage for the Alliance, Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit.

89.     Accordingly, MBIC has no duty to defend or indemnify ECL against the Alliance, Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit under the Umbrella Liability Coverage Part of the Policy.

WHEREFORE, MBIC respectfully request that this Honorable Court declare that it has no duty to defend or indemnify ECL in connection with the Alliance, Sandvig, Farley, Forrester, Solomon, and/or Byers Lawsuits, and grant any other relief that it deems just and equitable under the circumstances, including the award of costs.

## COUNT VII– DECLARATORY JUDGMENT
### (Umbrella Liability – Recording and Distribution of Material or Information Exclusion)

90.     Plaintiffs adopt and repeat the allegations of Paragraph 1 through 35 as and for Paragraph 90, as though the same were fully set forth herein.

91.     The Umbrella Liability Coverage Part of the Policy contains a Recording and Distribution of Material or Information in Violation of Law Exclusion, which states:

This insurance does not apply to:

**a.** "Personal and advertising injury":

21

  **(17)** **Recording And Distribution Of Material Or Information In Violation Of Law**

   Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

   (a) The Telephone Consumer Protec-tion Act (TCPA), including any amendment of or addition to such law;

   (b) The CAN-SPAM Act of 2003, includ-ing any amendment of or addition to such law;

   (c) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transac-tion Act (FACTA); or

   (d) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination disposal, collecting, recording, send-ing, transmitting, communicating or distribution of material or information.

92. The Alliance Complaint alleges that ECL violated HIPPA regulations in breaching its contracts. The Sandvig Complaint, Farley Complaint, and Forrester Complaint allege that ECL's conduct violated the FTC and HIPPA. The Solomon and Byers Complaint allege that ECL's conduct violated the FTC, HIPAA, and North Carolina's consumer protection statute.

93. All of these statutes are "any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination disposal, collecting, recording, send-ing, transmitting, communicating or distribution of material or information."

94. Thus, even assuming these Complaints allege "personal and advertising injury", such injury arises directly or indirectly out of any action or omission that violates or is alleged to violate any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination disposal, collecting, recording, send-ing, transmitting, communicating or distribution of material or information.

22

95. The Recording And Distribution Of Material or Information In Violation Of Law Exclusion, therefore, precludes coverage for the Alliance, Sandvig, Farley, Forrester, Solomon, and Byers Lawsuits.

96. The Umbrella Liability Coverage Part in the Policy consequently does not actually or potentially provide coverage for the Alliance, Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit.

97. Accordingly, MBIC has no duty to defend or indemnify ECL against the Alliance, Sandvig, Farley, Forrester, Solomon, or Byers Lawsuit under the Umbrella Liability Coverage Part of the Policy.

WHEREFORE, MBIC respectfully request that this Honorable Court declare that it has no duty to defend or indemnify ECL in connection with the Alliance, Sandvig, Farley, Forrester, Solomon, and/or Byers Lawsuits, and grant any other relief that it deems just and equitable under the circumstances, including the award of costs.

## COUNT VIII – DECLARATORY JUDGMENT
### (Umbrella Liability – Breach of Contract Exclusion)

98. Plaintiffs adopt and repeat the allegations of Paragraph 1 through 35 as and for Paragraph 98, as though the same were fully set forth herein.

99. The Umbrella Liability Coverage Part of the Policy contains the following exclusion:

This insurance does not apply to:

"Personal and advertising injury"

**6. Breach of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

23

100.    The first four counts of the Alliance Complaint allege breach of contract. The fraud counts in the Alliance Complaint also allege and are based on the same conduct that is alleged to have breached the contracts.

101.    Therefore, even assuming the Alliance Lawsuit alleges "personal and advertising injury", such injury arises out of a breach of contract and the Breach of Contract Exclusion precludes coverage for the Alliance Lawsuit.

102.    The Umbrella Liability Coverage Part in the Policy consequently does not actually or potentially provide coverage for the Alliance Lawsuit.

103.    Accordingly, MBIC has no duty to defend or indemnify ECL against the Alliance Lawsuit under the Umbrella Liability Coverage Part of the Policy.

WHEREFORE, MBIC respectfully request that this Honorable Court declare that it has no duty to defend or indemnify ECL in connection with the Alliance, Sandvig, Farley, Forrester, Solomon, and/or Byers Lawsuits, and grant any other relief that it deems just and equitable under the circumstances, including the award of costs.

Dated:  October 7, 2022                           Respectfully submitted,


                                                  */s/ Christopher Derrenbacher*
                                                  LEWIS BRISBOIS BISGAARD &
                                                  SMITH LLP

                                                  Christopher Derrenbacher
                                                  NC Bar No: 25402
                                                  3600 Glenwood Ave., Suite 350
                                                  Raleigh, NC 27612
                                                  Christopher.Derrenbacher@lewisbrisbois.com

                                                  *Attorneys for Plaintiff*